I9p1broa

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                      15 Cr. 608 (KPF)

STEVEN BROWN, RAFAEL REYES,

                Defendants.             Arraignment
                                          and
                                         Conference
------------------------------x

                                        New York, N.Y.
                                        September 25, 2018
                                        12:09 p.m.


Before:

                HON. KATHERINE POLK FAILLA,

                                        District Judge


                        APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  JESSICA R. LONERGAN
     Assistant United States Attorney

COHEN & FUNK, P.C.
     Attorneys for Defendant Steven Brown
BY:  LORI COHEN, ESQ.

LAW OFFICES OF CHRISTOPHER MADIOU
     Attorneys for Defendant Rafael Reyes
BY:  CHRISTOPHER P. MADIOU, ESQ.


ALSO PRESENT:  SATORU NAGANO, Intern, U.S.A.O.

I9p1broa

(Case called)

THE DEPUTY CLERK:  Counsel, please state your name for the record, starting with the government.

MS. LONERGAN:  For the government, Jessica Lonergan. At counsel table, with the Court's permission, is an intern, Satoru Nagano.

THE COURT:  Yes, of course.  Good afternoon, sir.

MR.  NAGANO:  Good afternoon.

MS. COHEN:  Good afternoon.  Lori Cohen representing Mr. Brown.

THE COURT:  Good afternoon.

Mr. Brown, good afternoon, to you, sir.

DEFENDANT BROWN:  Thank you.  Good afternoon.

THE COURT:  Good afternoon, Mr. Madiou.

MR. MADIOU:  Good afternoon, your Honor.  Christopher Madiou on behalf of Mr. Reyes, who's seated to my right.

THE COURT:  All right.  Mr. Reyes, good afternoon to you too.

DEFENDANT REYES:  Good afternoon.

THE COURT:  Ms. Cohen and Mr. Madiou, my understanding is that the first thing I will do is to arraign your clients on the indictment, is that correct?

MS. COHEN:  That's correct, your Honor.

MR. MADIOU:  Yes, your Honor.

THE COURT:  Thank you.  And each of you has a copy of

I9p1broa

the indictment that you've given to your clients?

MS. COHEN:  Yes, your Honor.  I've given it to Mr. Brown, I've reviewed it with him, we've read it together. We waive its public reading, and he enters a plea of not guilty.

THE COURT:  Okay.  You'll excuse me if I ask those questions again.  It's just my practice.

MS. COHEN:  Not at all.

THE COURT:  Mr. Madiou, the same, sir?

MR. MADIOU:  Yes, your Honor.

THE COURT:  Okay.  Thank you.

Mr. Brown, I'm going to begin with you.  Is there a copy of the indictment nearby?  Yes, your counsel has placed it right in front of you.

Sir, you see the document with the charges against you?

DEFENDANT BROWN:  Yes.

THE COURT:  At any time prior to my taking the bench this afternoon were you able to read this indictment?

DEFENDANT BROWN:  Yes.

THE COURT:  Have you had enough of an opportunity to speak with your attorney about the charges in the indictment?

DEFENDANT BROWN:  Yes.

THE COURT:  Would you like me to read this indictment in open court, or do you waive its public reading?

I9p1broa

DEFENDANT BROWN:  No, it's okay.

THE COURT:  I take that to mean I don't have to read it, is that correct?

DEFENDANT BROWN:  Yes.

THE COURT:  Sir, how do you plead?

DEFENDANT BROWN:  Not guilty.

THE COURT:  I will record that plea.  Thank you very much.

Mr. Reyes, let me ask you the same questions, sir.

I see now you have a copy of the indictment in front of you, is that correct?

DEFENDANT REYES:  Yes, ma'am.

THE COURT:  And you can bring the microphone closer to you if that's easier, sir.

Thank you.  The acoustics here are quite poor.  Thank you.

Sir, have you had enough of an opportunity to review this indictment with your attorney, Mr. Madiou?

DEFENDANT REYES:  Yes.

THE COURT:  Would you like me to read it in open court?

DEFENDANT REYES:  No, ma'am.

THE COURT:  And how do you plead, sir?

DEFENDANT REYES:  Not guilty.

THE COURT:  We will record that plea as well.  Thank

I9p1broa

you very much.

Mr. Madiou, or Ms. Cohen, if I'm recalling correctly, there are other defendants on this charging instrument, is that correct?

MS. COHEN:  That's correct, your Honor.

MR. MADIOU:  Yes.

THE COURT:  So you understand that I've had arraignments of some of these gentlemen's co-defendants prior to today.

MS. COHEN:  Yes.

MR. MADIOU:  Yes, your Honor.

THE COURT:  It is also my belief that there was a schedule for the production and review of discovery that was set up.  Is that something that you've discussed with the government?

MS. COHEN:  Yes, your Honor.  We've reviewed what was set previously, and it's acceptable to us.

MR. MADIOU:  Yes.

THE COURT:  Okay.  Thank you.

Let me please speak with Ms. Lonergan.  Ms. Lonergan, does the discovery vary or in any way differ for these defendants?

MS. LONERGAN:  Not extensively, your Honor.  I think as we mentioned at the last conference, we will be producing discovery that's individual to each defendant, and of course

I9p1broa

these defendants will have their own individual discovery, but as I outlined at the last conference, I'm going to do that very briefly again here for the benefit of these defendants and their attorneys.

THE COURT: Yes. I was just thinking that. I agree. You and I have heard this before, but it's very important that they hear it as well.

MS. LONERGAN: Yes.

So your Honor, as I set forth at the last conference, there are really two sets of charges in this charging instrument, which are linked, but there are three charges against these two defendants that have to do with a murder of an individual named Derrick Moore in August of 2009, and then there's also a narcotics conspiracy against defendants Marrero and Gonzalez. So I'll just provide a little bit of the background about the murder, which will also help explain our plan with respect to discovery.

So from about 2008 until approximately, really, the present, there have been individuals selling crack, primarily, crack cocaine, on Taylor Avenue in the Bronx. In connection with their selling of crack cocaine, they have carried and used firearms and they've discharged those firearms at rival gang members in attempted murders and murders. One of these murders, we allege, was the murder of Derrick Moore, who also went by "Gaudy," who was an associate of the Leland Avenue

I9p1broa

crew.  That was a rival drug gang.  Leland Avenue is about two blocks from Taylor Avenue in the 43rd precinct of the Bronx. And there was an ongoing back-and-forth rivalry between these two crews.

In addition, we allege that the Taylor Avenue crew had somewhat of an alliance with another crew that was based further away -- we call it the Creston Avenue Crew; I don't know that that's what they call themselves, but they were centered around Creston Avenue -- and that the leadership of the Taylor Avenue Crew and the Creston Avenue Crew had an alliance and that they performed acts, reciprocal acts of violence as favors to each other.  Members of the Taylor Avenue Crew would perform an act of violence for members of the Creston Avenue Crew and vice versa.  And we allege that the murder of Derrick Moore was one of these reciprocal acts of violence.

We allege that Mr. Brown was a member of the Taylor Avenue Crew and that Mr. Reyes was a member of the Creston Avenue Crew.

And I say that by way of background to explain that the discovery in this case will consist of a number of things. First, as I just mentioned, there will be individual discovery related to each defendant, which consists primarily of their criminal history, statements, if there are any, and other such items.  Then there also is going to be discovery that is more

I9p1broa

specific to the homicide itself.

THE COURT:  I'm sorry.  Just one moment, because I want to let the family members settle down.

Thank you very much.

MS. LONERGAN:  There's going to be discovery related to the homicide of Derrick Moore, so that would include items such as the autopsy report, vouchers of evidence that was collected in connection with the homicide, and as I mentioned before, just mentioned to defense counsel, there was an individual who was arrested by the Bronx District Attorney's Office and charged with this homicide.  In part, based on an investigation conducted by our office, the Bronx ended up dismissing the charges against that individual.  So information related to that will also be provided as part of the homicide-related discovery.

Then there's going to be discovery related to -- in 2015, we charged two cases, one against Taylor, which was in front of, and is continuing to be in front of, this Court, and one against members of Leland Avenue in front of Judge Pauley. We will be reproducing much if not all of the discovery related to both the Taylor and the Leland Avenue crews because it really helps establish the background of these enterprises.

Also, in approximately 2012, there was a case filed by our office in front of Judge Pauley charging members of the Creston Avenue Crew, including Mr. Reyes, and so we will be

I9p1broa

reproducing much if not all of the discovery related to Creston Avenue.

THE COURT:  To both of these defendants?

MS. LONERGAN:  To everyone, your Honor.

THE COURT:  To everyone.  Thank you.

MS. LONERGAN:  In addition, our investigation has revealed that Mr. Brown and others, as part of their drug dealing in the Bronx, traveled to York, Pennsylvania and dealt drugs in York, Pennsylvania.  Mr. Brown was actually arrested and charged federally by the Middle District of Pennsylvania and is currently incarcerated on those charges.  Because those charges are somewhat related to our case, we have spoken with prosecutors in the Middle District of Pennsylvania, and they will be reviewing their case file to figure out what's appropriate for production here.

Similarly, we allege that Mr. Gonzalez, Mr. Marrero, and other members of the Taylor Avenue Crew were traveling north to the Northern District of New York and dealing drugs there, and that in connection with that, there was an investigation and charges in the Northern District of New York. So similarly, we of course corresponded with the prosecutors, who will be reviewing their files to figure out what's appropriate for discovery in this case.

So all of that is to say there is quite a bit of discovery.  We're going to do our best to produce it in an

I9p1broa

organized fashion.  And as I just said to counsel but I'll also put it on the record, both myself and Ms. Comey, one of the other AUSAs on this case, we are always available for defense counsel to call us and ask us:  Please explain why you've given me these materials.  We have a roadmap.  It's not supposed to be a secret.  We really kind of want to make the review of this bulk of materials as easy as possible.

At the last conference, the Court appointed Emma Greenwood to assist in the production of discovery, and so we'll be working with her to make sure that we can do everything as smoothly as possible.

So that's basically a roadmap of what we expect the discovery to consist of.

At the last conference, we had set a date of 60 days from September 13th, which is approximately November -- I think it's November 12th, but that's a holiday, so I think somewhere around November 13th would be approximately 60 days.  And then we had scheduled to come back to appear before your Honor on December 10th at 3:00 p.m.

THE COURT:  And the schedule that you've just outlined is something that you've spoken about with Ms. Cohen and Mr. Madiou.

MS. LONERGAN:  That's correct, your Honor.  I think they had a question about whether they were supposed to have filed motions by that date, and I said that my understanding

I9p1broa

was no, it was just more of a check-in after they had received the discovery.

THE COURT:  Absolutely right.  It would be my expectation, if you are thinking about motions, that you let me know so that we could set a schedule on that date, but I would not actually expect the motions to be filed on that date.

Ms. Lonergan, is there anything else specific to these defendants or to this case that I should know about?

MS. LONERGAN:  Yes, your Honor.  As we noted previously, the charges against Mr. Brown and Mr. Reyes are death eligible.

THE COURT:  Yes.

MS. LONERGAN:  However, before charging, we received authorization from the Attorney General not to seek the death penalty against either of these defendants, so that part of the process has already been resolved, which will hopefully expedite the handling of the case in front of this Court.

And finally, at the last conference, for reasons set forth on the record, which I can summarize again here, the Court excluded time through December 10, 2018, the date of our next conference, and that exclusion of time was justified by the government's need to produce discovery, the defense counsel needing to review the discovery, discuss it with their clients, and for the parties to begin engaging in discussions regarding pretrial disposition.

I9p1broa

THE COURT:  Thank you very much.

Ms. Cohen, let me turn first to you, please. Ms. Cohen, is there anything specific about your client and his case that you want to bring to my attention in this conference?

MS. COHEN:  No, your Honor.  Mr. Madiou and I had a conversation with the assistant regarding separation that had been placed on these two defendants.  She's indicated that was not the government's intention and will work to release that separation.

THE COURT:  Okay.  And Ms. Cohen, I think you said to me a few moments ago that the date of December 10th was a date that worked for your client for reviewing discovery and being ready to come back and talk to us.

MS. COHEN:  Yes, your Honor.

THE COURT:  Can I understand that you have spoken with Mr. Brown about the Speedy Trial Act?  Because the very last thing about which the government spoke was the exclusion of time under that act.

MS. COHEN:  Yes, your Honor.

THE COURT:  Okay.  Thank you.  Am I correct that as a practical matter, because Mr. Brown and Mr. Reyes are co-defendants in a case where time has already been excluded, that they might be bound by that exclusion?

MS. COHEN:  I think there is some case precedent to that, but --

I9p1broa

THE COURT:  I'd just as soon do it again, if the parties don't mind.

MS. COHEN:  I don't mind.

THE COURT:  So Ms. Lonergan, I understand you're remaking the motion that you've made previously, yes?

MS. LONERGAN:  That's correct, your Honor.

THE COURT:  Okay.  So Ms. Cohen, did you understand that the government is seeking the exclusion of time through the 10th of December to permit the production of the discovery, which sounds like it's going to be quite voluminous, to give you a meaningful opportunity to review it, and to speak with Mr. Brown about the options he has available to him?

MS. COHEN:  Yes, your Honor.

THE COURT:  What is the defense's position regarding that?

MS. COHEN:  We have no objection.

THE COURT:  Okay.  Thank you.

Mr. Madiou, let me please turn to you, sir.  Are there things specific to Mr. Reyes that you would like me to know about in this proceeding?

MR. MADIOU:  I think generally I'd like you to know that Mr. Reyes suffers from mixed connective tissue disorder, which I've already put on the record in magistrate's court.  I believe there was a note filed on the docket.  I believe that something went to BOP.

I9p1broa

That's really the only thing I think the Court should be aware of that's specific to Mr. Reyes.  Other than that, no, your Honor.

THE COURT:  Yes.  I see that there was a medical attention form entered by Magistrate Judge Wang on the 20th of September.

Is it your understanding, sir, that your client's medical issue is being, if not addressed, at least not being harmed while detained?

MR. MADIOU:  One moment.

THE COURT:  Yes.  It's one thing to file the order. Is anybody acting on that order or at least refraining from acting in contravention of that order?

MR. MADIOU:  So Mr. Reyes has not seen a doctor yet, but I had represented Mr. Reyes on a prior violation of supervised release case, which was complicated because it came after his last sentence, so he sort of dealt with this in the middle of serving his last sentence, which is where I got to know Mr. Reyes.  He was at that time designated to Butner medical facility in North Carolina.  They were caring for him down there.  I mention this because when he came back up to New York, he was housed at MDC.  The same doctors I understand are still at MDC.  I believe that those same doctors will be familiar with the very specific condition that Mr. Reyes has. I have HIPAA forms signed for Mr. Reyes which will allow me to

I9p1broa

be in communications with the legal department at BOP and by extension the medical department, so I will be on top of that. If there are any issues that need court intervention, I will not be shy about letting you know.  But to the extent that -- there's nothing that's detrimental to his condition right now. He hasn't seen a doctor, which I hope he will see within the next week, but he just arrived last week, so that seems about in keeping with their schedule over there.

THE COURT:  Okay.  You'll let me know if the middle of October comes and he hasn't seen someone.

MR. MADIOU:  Absolutely.

THE COURT:  And if I don't hear from you, I will assume that everything's been resolved.

Sir, is the 10th of December a date that works for you and your client?

MR. MADIOU:  It is, your Honor.

THE COURT:  And have you explained to him the Speedy Trial Act and the reasons why the government is seeking the exclusion of time under it?

MR. MADIOU:  I have, your Honor.

THE COURT:  Is there a position from your client?

MR. MADIOU:  Yes.  We consent to the exclusion of that time.

THE COURT:  And I should have asked you, sir, are there any other issues specific to your client that you want me

I9p1broa

to know about?

MR. MADIOU:  No, thank you, your Honor.

THE COURT:  Okay.  Thank you.

Mr. Brown and Mr. Reyes, you've heard me speak with your attorneys about the Speedy Trial Act, and I know that they've spoken with you about it.  It is something that occurs in criminal cases and it requires, generally speaking, that certain events take place within certain periods of time.  And there are bases for me to exclude periods of time from consideration under the act.  And the one that comes up very commonly at the beginning of the case is that the ends of justice served by excluding the period of time between the first and the second conferences outweigh the interests that each of you has and that the public in general has in you getting to trial more quickly.  Because the idea is you're going to be receiving a lot of discovery from the government, your attorneys need to review it and to review it with you, they need to talk to you about what they understand your cases to be and what you understand your cases to be, and then they will discuss with you the options that you have available to you.  You heard reference earlier in this discussion to motions.  There may be motions that you may want to make.  You may want to set a trial date.  You may want to do something short of trial.  But you need the time, especially given the amount of discovery that's going to be produced, to look at the

I9p1broa

information and the options available.  So I am making the finding that the ends of justice served by excluding the period of time from today's date through December 10th outweigh the interests that each of you has and that the public in general has in you getting to trial more quickly.  And so that time will be excluded.

Mr. Brown, do you understand what I've just said, sir?

DEFENDANT BROWN:  Yes.

THE COURT:  Okay.  Thank you.

And Mr. Reyes, do you understand what I've just said?

DEFENDANT REYES:  Yes, ma'am.

THE COURT:  Okay.  Ms. Lonergan, is there anything else we should be addressing in this proceeding?

MS. LONERGAN:  Not from the government, your Honor.

THE COURT:  Okay.  Thank you.

Ms. Cohen, anything else?

MS. COHEN:  No, your Honor.  Thank you.

THE COURT:  Mr. Madiou.

MR. MADIOU:  No, thank you, your Honor.

THE COURT:  All right.  We are adjourned.  Thank you very much.

ALL COUNSEL:  Thank you.

THE DEPUTY CLERK:  All rise.

o0o